474 So.2d 513 (1985)
James Paul KLEIN
v.
Martha HIMBERT and Aetna Casualty and Surety Company.
No. CA 3148.
Court of Appeal of Louisiana, Fourth Circuit.
August 7, 1985.
*514 Maria I. O'Byrne Stephenson, E.S. Ned Nelson, Bryan, Nelson, Allen, Schroeder & Stephenson, New Orleans, for appellants.
Birdsall, Rodriguez, Robelot & Nelson, Benjamin J. Birdsall, Jr., Patrick G. Kehoe, Jr., Walter A. Robelot, New Orleans, for appellee.
Before BARRY, CIACCIO and WILLIAMS, JJ.
CIACCIO, Judge.
Plaintiff, Paul Klein, filed this action to recover damages for personal injuries he sustained on April 29, 1983, when as a pedestrian, he was struck by a vehicle owned by defendant, Martha Himbert, and operated by her minor son, Jacques Himbert. Following a bench trial the district court granted judgment in favor of the plaintiff for $414,298.64 against defendant and against her excess liability insurer, U.S. Fire Insurance Company.[1] Defendants appeal the district court judgment seeking a remittur and plaintiff has answered seeking additur. We affirm.
The issue of liability is not a matter of contest in this appeal. The sole issue for consideration is the adequacy of the damage award.
Plaintiff, while in the process of walking across the roadway of Lakeshore Drive in the City of New Orleans, had stopped in the center of the four lane roadway to allow oncoming traffic to pass when he was struck by the Himbert vehicle. As a result of the impact plaintiff was propelled over the front of the car, hit the trunk of the vehicle and rolled onto the pavement. He was taken from the accident scene by ambulance to East Jefferson Hospital. At approximately midnight he was examined by an emergency room physician and also by Dr. John V. Garoutte, an orthopedic surgeon, who was called to treat the plaintiff.
Plaintiff was found to have sustained major damage to the restraining structures of both knees, necessitating almost immediate surgery. During surgery, the lateral meniscus on the lateral aspect of the right knee was removed, and the medial meniscus of this knee was repaired. The medial collateral ligament and anterior cruciate ligament were sutured back to the bone. The minor soft tissue of the right leg was also repaired and the skin was sewn back and a full leg cast, from the hip to foot, was applied. Similar procedures were conducted on the left leg, however, this leg *515 sustained damage primarily to the outer aspect of the leg. A full cast was also applied to this leg.
Plaintiff remained in the hospital, in considerable pain, until May 10, 1983. During this time Demerol was administered on a regular basis in order to relieve pain. Plaintiff remained in the two leg casts for approximately two and one-half months. During this time he needed assistance to turn in his bed and to go to the bathroom. He was able to move around in a wheelchair, which he used for a period of three and one-half months. After the casts were removed plaintiff, at first, could not walk, so he continued to use his wheelchair. He was given braces and crutches to aid him in walking. He used the crutches regularly until October of that year and thereafter, periodically until December. He continued to wear the braces at night and periodically on those days when he was experiencing difficulties with his legs. He continues to take medicine for pain as it is needed. As of the time of trial, the plaintiff continued to experience pain and swelling in his legs which resulted in a severe restriction of his activities.
Dr. Garoutte found that as a result of this accident the plaintiff sustained a 20% permanent functional impairment of the right knee and a 10% permanent functional impairment of the left knee. He also believed that plaintiff's intra articular injury would cause him to develop arthritis. Dr. Garoutte stated that although plaintiff would be able to engage in some activities, he would not recommend any activity in which plaintiff would squat 4 to 5 times a day nor any activity which require him to function at a height of over 6 to 8 feet because the plaintiff does not have normal reflex recovery ability and he has a laxity in his knees. Dr. Garoutte recognizes the plaintiff's need to engage in activities but the type and amount of activities are questionable. Therefore he recommended that the plaintiff not engage in heavy physical athletics but that he experiment with different activities until he realized (by the pain experienced) what activities he could endure.
The trial court awarded damages as follows:

General damaged ............... $300,000.00
Diminished earning capacity ... $100,000.00
Medical expenses .............. $ 11,298.64
Lost wages .................... $ 3,000.00
 ___________
Total ......................... $414,298.64

The following findings were made by the trial judge:
REASONS FOR JUDGMENT
Quite aside from the problems generated by comparative fault, Baumgartner Bays v. Lee, plaintiff here was entirely free of contributory negligence and his award will not be reduced.
His injuries are very serious, and defendant's movies confirm rather than dispute his limitation of motion. General damages will be fixed at $300,000.00.
His diminished earning capacity is not difficult to calculate or, more accurately, to anticipate. His academic performance arguably suggests he would have pursued a career based on physical dexterity. But his considerable social skills say otherwise. When all is said, I cannot ignore totally the potential impact of his future limitations on his future earning capacity. This loss will be estimated at $100,000.00.
I am not satisfied with the need for or the proof of payment for the home nursing service and this aspect of the claim will be denied.

General Damages
In seeking a reduction in the amount of general damages, defendants argue that the plaintiff's activities, as evidenced by the testimony and the film presented at the trial, indicate that his injuries are not so severe as to warrant such an award.
The plaintiff argues the award is inadequate and contends this is evidenced by his permanent disability.
*516 In assessing damages in cases of quasi-offense, much discretion is left to the trial court judge. Perniciaro v. Brinch, 384 So.2d 392 (La., 1980). Before the appellate court will disturb such an award, the record must clearly reveal that the trier of fact abused his discretion in making the award, based upon the particular injuries and their effect upon the particular individual who sustained the injuries. Perniciaro v. Brinch, supra; Reck v. Stevens, 373 So.2d 498 (La.,1979).
The record reveals that, at the time of this accident, plaintiff was a college age student who had excelled in various types of athletics. He was a below average student and he had worked most recently as a coal inspector, which job involved such physical dexterity as climbing, jumping and lifting heavy materials.
As a result of this accident the plaintiff sustained a 20% permanent impairment of the right knee and a 10% permanent impairment of the left knee. It is more probable than not that he will develop arthritis as a result of his injuries.
Following the accident it was thought that he might not walk again. Plaintiff was subjected to surgery and he spent 11 days in the hospital. He was placed in 2 full leg casts, weighing approximately 70 pounds each, for a period of approximately 2½ months. He needed the aid of a wheelchair for 4 weeks after the casts were removed and he used crutches for 2 full months and intermittently thereafter. He wore leg braces every night and also on a daily basis when warranted by weakness or pain in his legs. He suffered pain continually for an extended period of time following the accident and continues to suffer pain at various intervals.
As a result of this accident plaintiff was forced to forego his education for 2 semesters and also to forgo a religious missionary program. He could no longer engage in his prior athletic activities such as football, jogging and mountain climbing. When he did attempt to engage in physical endeavors in a hope of rebuilding his physical skills, he suffered pain and physical setbacks. Although he was a person of great determination, the plaintiff's inability to function as he once did, caused him to become depressed.
We have viewed the film to which the defendants allude as being supportive of their contention that the general damage award should be reduced. We find the film to be subject to conflicting interpretations. That is, although the film depicts the plaintiff apparently engaged in normal, everyday activities, such as bending and walking, it also evidences an inability of the plaintiff to bend his knees in a normal manner. As such, the film is not clearly supportive of either party's position regarding the plaintiff's physical condition. Evidence in the form of moving pictures must be used with great caution because such pictures show only very brief intervals of the activities of the subject. They do not show rest periods, they do not reflect whether the subject is suffering pain, and they do not show the after-effects of the activities. Glover v. Southern Pipe & Supply Co., et al, 408 So.2d 352 (La.App. 4th Cir.1981).
Considering the plaintiff's injuries and the effect they have had and will have upon him, we cannot say that the trial court abused its discretion in awarding $300,000 in general damages as compensation for the plaintiff's pain, suffering and disability caused by this accident.
Loss of Earning Capacity
The defendants contend that the plaintiff failed to prove his loss of earning capacity in that the plaintiff's only record of earnings were those from summer jobs and he was a full time student with no definite plans for future permanent employment at the time of this accident. In the alternative, defendant argues that the award of $100,000 for this element of damages is excessive.
The plaintiff argues that the award is inadequate.
The plaintiff is entitled to compensation for loss of earning capacity as well *517 as lost earnings from the job in which he is engaged at the time of the accident. Jacobs v. New Orleans Public Service, Inc., 432 So.2d 843 (La., 1983). In discussing the issue of loss of earning capacity, the Louisiana Supreme Court stated:
The jury was entitled to determine from these and other factors in the record the probabilities and estimates of plaintiff's ability to earn money. What plaintiff earned before and after the injury does not constitute the measure. Even if he had been unemployed at the time of the injury he is entitled to an award for impairment or diminution of earning power. And while his earning capacity at the time of the injury is relevant, it is not necessarily determinative of his future ability to earn. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976). Damages should be estimated on the injured person's ability to earn money, rather than what he actually earned before the injury.
* * * * * *
Earning capacity in itself is not necessarily determined by actual loss; damages may be assessed for the deprivation of what the injured plaintiff could have earned despite the fact that he may never have seen fit to take advantage of that capacity. The theory is that the injury done him has deprived him of a capacity he would have been entitled to enjoy even though he never profited from it monetarily. Folse v. Fakouri, 371 So.2d 1120 at 1123-1124 (La., 1979).
Damages for the impairment of earning capacity cannot be calculated with certainty and in the exercise of that function the trial judge must be accorded broad discretion. Hill v. Sills, 404 So.2d 1323 (La.App., 2nd Cir., 1981).
In this case, evidence was presented which indicated that the plaintiff, a college student, did not excel in academics but he did show a particular ability for achievement in athletic activities.
At the time of this incident, plaintiff was a student. He testified that he worked the summers of 1981 and 1982 for a company named SGS Control Service. He was employed as a free lance mineral inspector. He worked in 1982 earning a total of $863. In 1983, he had worked only three days before he became involved in this accident. He testified that while he was in high school he made up to $2,000 one summer, engaging in odd jobs.
Robert Drew, an operations supervisor for SGS Control Service testified regarding that company's business practices and plaintiff's employment. He stated that Mr. Klein had been employed by his company for two consecutive summers and that he could have worked the remainder of the summer of 1983, if work was available. He also stated that plaintiff was earning $4 per hour plus a meal allowance of $15 per day, as well as a mileage allowance. He testified that the current pay scale for free lance workers was $5 per hour and they could work from 40 to 60 hours per week. Mr. Drew further stated that the employer decides who becomes a permanent employee and he knew of no reason why the company would not hire plaintiff as a permanent employee. Moreover, Drew stated that the plaintiff was a good worker and he would have recommended him for the status of permanent employee.
Craig Feldbaum, a vocation and rehabilitation psychologist, testified that because of this accident plaintiff was placed in a competitive disadvantage in the job market. Considering the plaintiff's prior physical skills and low verbal and performance intelligence quotant, prior to this accident, he could have obtained employment as a senior wireline operator or a roustabout with an offshore company, earning $12.10 to $12.40 per hour. However, due to his handicap he is now restricted to a job which is sedentary in nature, such as an entry level clerk, earning approximately $6.00 per hour. Feldbaum postulates that because of the plaintiff's good work ethic and supportive family environment, that he will obtain employment and will succeed in his field.
*518 Considering the youth of this plaintiff and the serious diminution of his ability to earn a living due to his physical limitations resulting from this accident, and also considering his prior ability to earn a living, we cannot say that the trial judge erred in awarding the plaintiff $100,000 as loss of earning capacity. This amount was within the discretion of the trial judge and is supported by the record.

Lost Wages
Defendants argue that the trial judge erred in awarding the plaintiff $3,000 lost wages. They contend that the record does not support such an award in that the plaintiff only earned $863.25 in 1982 and the highest amount he ever earned, according to the unsubstantiated testimony of the plaintiff was $2,000, earned while working during the summer while in high school.
Awards for lost wages are speculative by nature and cannot be calculated with mathematical certainty and thus the trial court necessarily must have much discretion in fixing lost wage awards. Holmes v. Texaco, Inc., 422 So.2d 1302 (La.App.,5th Cir., 1982).
Mr. Drew, the operations supervisor for the plaintiff's former employer, testified that their company's busiest time of the year was during the summer. During this time, free-lance inspectors were earning $4.00 per hour and $15 meal allowance, as well as a mileage expense. They were working 40 to 60 hours per week. There were four months or 16 weeks of summer remaining after plaintiff's injury. Under these circumstances an award of $3,000 is not unreasonable nor is it an abuse of the judge's great discretion.
For the reasons assigned, the judgment of the trial court is affirmed at defendant's costs.
AFFIRMED.
WILLIAMS, J., dissents in part.
WILLIAMS, Judge, dissenting in part.
I would hold that the $100,000.00 awarded to plaintiff for loss of earning capacity is unsubstantiated by the record. After reviewing the evidence, including the film mentioned in the majority opinion, I find that any damages for loss of earning capacity are speculative. There was no true indication below of plaintiff's potential earning capacity or that it was diminished in any way.
NOTES
[1] Prior to trial plaintiff reached a settlement with the defendant, Martha Himbert, and her general liability insurer, Aetna Casualty & Surety Company, for the policy limit of $100,000.