548 So.2d 53 (1989)
Joseph R. CARTER, Plaintiff-Appellant,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE CO., et al., Defendants-Appellees.
No. 88-474.
Court of Appeal of Louisiana, Third Circuit.
July 17, 1989.
Wm. Ford, Alexandria, for plaintiff/appellant.
Gist, Methvin, Hughes & Munsterman, DeWitt Methvin, Alexandria, for defendants/appellees.
Before DOMENGEAUX, GUIDRY and FORET, JJ.
FORET, Judge.
Joseph R. Carter, plaintiff-appellant herein, filed this personal injury action against State Farm Mutual Automobile Insurance Co., praying for damages arising out of an automobile accident occurring on September 12, 1986. Liability was stipulated. The trial court rendered judgment in favor of Carter in the amount of $3,500 for physical and mental pain and suffering and $1,458.50 for medical expenses, for a total judgment in the amount of $4,958.50.
*54 Carter appeals, contending that the general damage award of $3,500 is inadequate. Additionally, Carter contends that he is entitled to compensation for economic loss in the form of loss of earnings and/or impairment of earning capacity. We find no error by the trial court and thus, we affirm.

FACTS
The trial court, in written reasons for judgment, succinctly summarized the facts as follows:
"The plaintiff was injured in an accident which occurred on September 12, 1986, when a car, in which he was riding as a guest passenger, was struck on the right side by a vehicle which ran a stop sign. The passenger door of the automobile had to be torn off before plaintiff could be removed and he was taken to the emergency room of the Rapides General Hospital in Alexandria, Louisiana by ambulance. He complained of pain in the cervical and lower or lumbar spine; right upper quadrant abdominal pain and pain in the right knee. X-rays were taken of the abdomen and the cervical and lumbar spine areas. All were negative for traumatic injury. Marginal ostephytes were noted at the L2-L3 level of lumbar spine. The plaintiff was released from the emergency room to return home for bed rest for 12 hours with instructions to return to the hospital if his abdominal pain persisted or worsened.
"The plaintiff's next medical treatment was at the VA Hospital. He reported as an out-patient on September 16, 1986, and complained of pain in his neck and head and possibly in his right side below his ribs. X-rays were taken of the skull, left chest ribs and cervical spine. These were negative for traumatic injury. A physical examination on this visit revealed nothing of significance and the diagnosis was `possible post-trauma muscle strain, minor'.
"Plaintiff again reported to the out-patient clinic at the VA hospital on September 22, 1986. His complaints on this occasion were neck pain and soreness. The previous x-rays were reviewed. A physical exam revealed a loss of motion in plaintiff's neck. He was diagnosed as having a cervical strain and physical therapy and pain medication were prescribed. A report to the physical therapy department that date indicates that plaintiff was to be treated for tenderness over the right upper trapezius muscle that was produced on movements of the neck.
"Plaintiff underwent a total six physical therapy treatments at the VA Hospital, the first being on September 22, 1986 and the last on October 14, 1986. He was treated with hot packs, ultrasound and exercises. At the conclusion of the final treatment the physical therapist noted on his report that:
`Pt (patient) had no pain of his back until today and then he had some.'
"Plaintiff was sent to Dr. Vanda Davidson by his attorney for examination and treatment on November 7, 1986. His complaints to Dr. Davidson were back pain that would come and go and cricks in his neck. Physical examination by Dr. Davidson revealed a nearly full range of motion in plaintiff's neck with the only limitation being when he looked to the left. No spasm or tenderness was noted in the area of the neck. Examination of the low back revealed tenderness over both sides of the back with mild spasms noted on the muscle on the right. Motion tests revealed some weakness of the muscles on the right and plaintiff displayed some weakness of the muscle that bends the big toe on the right. Xrays of the lumbar spine revealed arthritic changes and some narrowing of the disc spaces. Cervical x-rays were normal.
"Based on these findings, Dr. Davidson concluded that plaintiff was suffering from a strain of the low back which was aggravating a mild degenerative arthritic condition. Because of weakness in plaintiff's big toe Dr. Davidson made an appointment for an electromyogram to be administered by Dr. Naalbandian. This was performed and reported as normal by Dr. Naalbandian.

*55 "Plaintiff was next seen by Dr. Davidson on November 24, 1986. At this time his physical examination was normal. Dr. Davidson noted no muscle weaknesses and felt that plaintiff could return to full work duty cautioning only that he be careful in lifting or carrying loads. Dr. Davidson later explained that this did not mean he restricted plaintiff in any way from lifting or carrying, but only that he should be careful when doing so.
"Plaintiff next saw Dr. Davidson on January 12, 1987 at which time plaintiff had no complaints. Dr. Davidson did note that plaintiff told him that ... `his back was not giving him too much difficulty' at that time. Motion tests performed by Dr. Davidson revealed no complaints, deviations or weaknesses."

GENERAL DAMAGES
It is well settled that absent an initial determination that the trier of fact abused its discretion in the award of general damages, under the facts of the case, a reviewing court should not disturb the trier's award.
The trial court summarized the testimony of Carter and his wife as follows:
"Plaintiffs testimony was that he suffered from the injuries received in the accident on a daily basis for a period of five to six months and that he still suffers from these injuries on at least a weekly basis. He states that he was unable to sleep for five or six months because of his injuries; that he had to put a piece of plywood beneath his mattress for relief (at the advice of his mother-in-law); that he wore a neck brace that had been placed on him in the ambulance for approximately one month after the accident and that even at the time of trial he was unable to do any bending or stooping. He felt that it was in June 1987 before he could return to any type of work. Also, he stated that he was no longer able to engage in sports activities such as baseball, basketball and football, all of which he played on a regular basis before his accident.
Plaintiff's wife, Mary Carter, for the most part, verified the above facts testified to by plaintiff. She testified that plaintiff still takes medication for pain. He gets this medication from his mother rather than from doctor's prescriptions."
The trial court found that Carter's injuries, as a result of the September 12, 1986 accident, consisted of a mild strain to his cervical and lumbar spine, the latter of which was aggravating a mild degenerative arthritic condition. The court further found that the combined duration of these two injuries was approximately ten weeks, until November 24, 1986, although Carter may have experienced a nagging intermittent pain thereafter. The trial court appears to have rejected any evidence that Carter's occasional subjective complaints, which continued through the time of trial, significantly affected his lifestyle or caused serious difficulty.
In light of the evidence, we conclude that the trial judge correctly awarded general damages in the amount of $3,500.

ECONOMIC LOSS
From our review of the record, the trial court correctly refused to award Carter damages for economic loss. Carter contends that the trial court erred, in its reasons for judgment, in stating that: "[t]he record does not reflect that plaintiff was physically unable to work ... during this period."
The trial court appears to have been referring to Carter's ten-week recovery period after the accident and prior to Dr. Davidson's release of Carter for full work duty on November 26, 1986. This statement of fact appears to be in error if the court accepts the statement of Dr. Davidson that Carter was unable to perform any meaningful employment during this time.
Regardless of this purported factual error on behalf of the trial court, the burden is on the plaintiff to prove that he has or will suffer a loss of income. Burnham v. Frey-Shoemaker-Colbert-Brodnax, 445 So.2d 477 (La.App.2 Cir.1984).
*56 The record does not support plaintiffs contention that he suffered any permanent disability as a result of the accident. Therefore, he is not entitled to an award for future loss of wages or earning capacity. Carter was unemployed at the time of the accident. There was no evidence presented that he suffered the loss of any available employment prospects; nor was there any evidence that he was actively seeking employment at the time of the accident. Additionally, there was no evidence that he lost any unemployment benefits due to being unavailable for work. Therefore, the trial court correctly found that there was no evidence that reasonably supported an award for past lost wages. See, Hicks v. Barney, 526 So.2d 391 (La. App.4 Cir.1988); Hunt v. Bd. ofSup'rs. of La. State Univ., 522 So.2d 1144 (La.App.2 Cir.1988); Wilson v. Magee, 367 So.2d 314 (La.1979).
The only remaining potential claim of Carter would be for loss of past earning capacity for the ten-week period of recovery.
"Loss of earning capacity is determined by deducting plaintiff's earning ability after the injury from her earning ability immediately prior to the injury rather than deducting her income after the injury from any income prior to the injury."

Koury v. Lanier Exp., Inc., 528 So.2d 734, 742 (La.App.3 Cir.1988).
"Impairment of earning capacity cannot be calculated with mathematical certainty, and sound judicial discretion must be exercised after all proper considerations are weighed. Philippe v. Browning Arms Co., 395 So.2d 310 (La.1981)."

LeBleu v. Dynamic Indus. Constructors, 526 So.2d 1184, 1189 (La.App.3 Cir. 1988), writ, denied, 528 So.2d 154 (La. 1988).
Past work history is of extreme importance in calculating the amount, if any, due for economic loss. Morris v. Highlands Ins. Co., 525 So.2d 125 (La.App.3 Cir.1988). The record shows that Carter made $6.50 per hour pouring concrete prior to the accident, but was laid off in August of 1986. Carter was 35 years old at the time of the accident, with no training or work history in evidence other than the August, 1986 employment mentioned above. When questioned on cross-examination as to his 1986 income, he replied that he had no idea of the amount. Despite Dr. Davidson's release of Carter for full work duty on November 26, 1986, Carter's first employment after the accident was in August of 1987. He was again laid off from this employment in September of 1987.
Plaintiff relies on Klein v. Himbert, 474 So.2d 513 (La.App.4 Cir.1985), for the proposition that he should be granted damages for impairment of earning capacity.
Klein is distinguishable on its facts from this case. In Klein, the plaintiff was a college-aged student; he was employed and was guaranteed a job for the remainder of the summer with an employer he had worked for the two previous summers. There was testimony that Klein was a good worker and would have been recommended for permanent employment, but for the accident.
In this case, Carter was unemployed. As stated earlier, we have no evidence as to his training, work experience, and consistency in this regard. There was insufficient evidence presented to show that he would have been working during this ten-week recuperative period, "but for" the accident. We cannot say that the trial court was in error in failing to find that Carter's earning ability was diminished by the accident. Carter was unemployed with no proven current job prospects at the time of the accident. It would seem that any loss of past earning capacity was due to Carter's being laid off at work rather than arising from the accident. Thus, we are satisfied that the denial of this claim by the trial court was supported by the record, and we affirm the judgment of the trial court.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of *57 this appeal are assessed to plaintiff-appellant, Joseph R. Carter.
AFFIRMED.