626 So.2d 438 (1993)
Sandra Martin McDONOUGH
v.
ROYAL SONESTA, INC., Royal Sonesta Hotel, Sonesta International Hotel Corporation, the Aetna Casualty and Surety Company and Aetna Life and Casualty as the Insurer of Royal Sonesta, Inc., Aetna Life and Casualty, and Aetna Life Insurance Company as Owner of the Building.
No. 93-CA-0183.
Court of Appeal of Louisiana, Fourth Circuit.
October 28, 1993.
Rehearing Denied December 9, 1993.
*439 Sessions & Fishman, Camilo K. Salas, III and Evan E. Tolchinsky, New Orleans, for plaintiff-appellant, Sandra Martin McDonough.
Alan A. Zaunbrecher, Metairie, for defendants-appellees, Royal Sonesta, et al.
Before KLEES, ARMSTRONG and JONES, JJ.
KLEES, Judge.
This case involves a trip and fall in the Royal Sonesta Hotel in New Orleans, on February 8, 1985. The plaintiff, an attorney, was in New Orleans for the winter meeting of the Lawyer Pilots Bar Association. She was returning to her room after an outing with two other attorneys when she allegedly fell as she exited a doorway leading into a courtyard in the hotel. Plaintiff suffered a fractured heel as a result of the accident.
At the trial much testimony was heard concerning violations of the New Orleans Building Code and the National Fire Protection Association's Life Safety Code and the applicability of these codes to the door in question.
During the course of the trial, defendants moved to strike the testimony of plaintiff's experts because of their reliance on the Life Safety Code. Defendants asserted that the Life Safety Code was not applicable to the facts of this case because the door in question was not being used as an emergency exit at the time of this incident. It was defendants' contention, and indeed it was elicited from plaintiff's experts on cross-examination, that the Life Safety Code was designed to be used for emergency exits.
In their Motion to Strike, defendants relied on Pardee v. Natchitoches Parish Police Jury, 600 So.2d 867 (La.App. 3d Cir.1992), writ denied, 604 So.2d 1008 (La.1992). They argued that although a given door could be used as an exit during an emergency, if an accident occurs in a non-emergency situation, the Life Safety Code is totally inapplicable to that door.
Accordingly, defendants requested that any testimony by plaintiff's experts referencing the Life Safety Code be stricken from the record. During the course of the trial, the judge instructed the jury as follows:
[Y]ou are instructed that the testimony of John Pfeffer and Dennis Brady as well as the witness presently testifying ... who have testified and rendered their opinion as to the area in question pertaining to the references of any violation of the National Fire Protection Association and ANSI should be weighed in light of the fact [sic] of this case and whether or not the area where the plaintiff fell was it [sic] intended as an emergency exit.
Let me go a little bit further. The NFPA,..., rules are established for exits used by persons during the emergency situations. Any testimony or reference made by these experts, three in number, to the National Fire Protection Association standards should be stricken or disregarded by you as they do not apply to the premises in question in the event you as jurors determine and, of course, the weight of the evidence is that the exits were used by persons during emergency situation [sic].
We find this instruction to be an incorrect statement of the law and because this error more than likely tainted the jury's judgment, *440 the verdict must be set aside on appeal. Dye v. Schwegmann Giant Super Markets, Inc., 607 So.2d 564 (La.1992), reh'g denied, 609 So.2d 248 (La.1992); Picou v. Ferrara, 483 So.2d 915 (La.1986).
This court under its constitutional authority to review facts, must now make an independent determination of the facts from the record without according any weight whatsoever to the factual findings of the erroneously instructed jury. Dye, 607 So.2d at 564; Gonzales v. Xerox Corp., 320 So.2d 163 (La.1975).
In the instant case, the New Orleans Building Code is the applicable law. All buildings constructed in the city of New Orleans must follow the guidelines of the Code. Therefore, the jury should have been instructed to decide if the doorway in question, as constructed, violated the provisions of the New Orleans Building Code.
Plaintiff's expert, John Pfeffer, testified that the doorway in question violated provisions of the New Orleans Building Code effective at the time the Royal Sonesta was built, specifically Article 3304. On cross-examination Mr. Pfeffer admitted that the New Orleans Building Code adopted the National Fire Protection Association's Life Safety Code (which would only apply to exits being used in an emergency), but further testified that the doorway in question violated the New Orleans Building Code alone, notwithstanding any provisions of the Life Safety Code. (Record, Vol. II, at p. 88).
We have reviewed the record pertaining to damages and have determined plaintiff's special damages to be $1,561.65 for past medical expenses, $480.00 for future medical expenses, and $843.70 for incidental expenses incurred in connection with her return home following her accident.
We have further determined that plaintiff incurred $484.50 in lost wages. This loss was documented and placed into evidence. Plaintiff additionally claimed a loss of $23,500.00. She testified that she turned away potential clients because of her condition, and that those cases could have amounted to income of $23,500.00 in retainers and fees.
A claim for lost wages need not be proven with mathematical certainty; it only requires such proof as reasonably establishes the claim. This may consist of the plaintiff's own testimony. Sherlock v. Berry, 487 So.2d 555 (La.App. 4th Cir.1986); Woolfarth v. City of New Orleans, 572 So.2d 1194 (La.App. 4th Cir.1990). However, to allow a plaintiff to recover damages for lost wages when there is no independent support of plaintiff's claim is highly speculative. Hicks v. Barney, 526 So.2d 391 (La.App. 4th Cir.1988). The only evidence of plaintiff's loss was her own testimony and a typed list of the first names of potential clients noting the amount she would have charged as a retainer. This is an unacceptable basis for an award. Id.
The record indicates that plaintiff was an active, athletic individual prior to this accident. She testified that she can no longer play tennis or engage in any activity that requires prolonged walking or standing. This testimony was substantiated by her treating physician. He also testified that there were mild arthritic changes in plaintiff's heel joint and assessed a ten percent permanent disability to plaintiff's lower right extremity.
Based on the record and the guidelines set forth in Reck v. Stevens, 373 So.2d 498 (La. 1979), we award plaintiff $12,000.00 in general damages, making the total award $15,369.85, plus interest from date of judicial demand.
REVERSED AND RENDERED.