# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 06-1160


**DANNIE COTTLE**

**VERSUS**

**CONAGRA POULTRY COMPANY**


**********

APPEAL FROM THE
TENTH JUDICIAL DISTRICT COURT
PARISH OF NATCHITOCHES, NO. 75683, DIV. B
HONORABLE FRED C. SEXTON JR., DISTRICT JUDGE

**********

## JOHN D. SAUNDERS
## JUDGE

**********

Court composed of John D. Saunders, Jimmie C. Peters, and Michael G. Sullivan, Judges.

**AFFIRMED AS AMENDED.**

**William Preston Crews, Jr.**
**Attorney at Law**
**P. O. Box 226**
**Natchitoches, LA 71458-0226**
**(318) 356-8001**
**Counsel for Defendant/Appellee:**
**ConAgra Poultry Company**

**William J. Joyce**
**Jones, Walker**
**201 St. Charles Ave., 50th Floor**
**New Orleans, LA 70170**
**(504) 582-8000**
**Counsel for Intervenor/Appellee:**
**Union Central Life Ins. Co.**

**Mark Kenneth Manno**
**Fischer & McMahon**
**3421 Youree Drive**
**Shreveport, LA 71105**
**(318) 869-0304**
**Counsel for Plaintiff/Appellant:**
**Dannie Cottle**

**SAUNDERS, Judge.**

This is a personal injury action where a truck driver was injured on the premises of one of her employer's clients. Plaintiff contended that her injury was caused by the negligence of the premises owner in failing to remedy a situation that created an unreasonably dangerous, unsafe, and hazardous condition on the premises. Specifically, employees of the premises owner had placed a wooden pallet at the foot of a flight of stairs, and the premises owner knew that people would use the pallet to reach the stairs.

The trial court found that the truck driver fell and injured herself partially due to her own negligence and partially due to the negligence of the premises owner. In its judgment the trial court awarded plaintiff lost wages.

Plaintiff appealed the amount of lost wages the court awarded, arguing that the amount of lost wages was improperly calculated in two ways: (1) the average weekly wage used by the trial court was incorrect and (2) the length of disability that the court found was manifestly erroneous. We agree with both assertions. We vacate the trial court's findings regarding plaintiff's average weekly wage and length of disability. We render an accurate average weekly wage and length of disability, and we recalculate the damages due plaintiff for lost wages. We amend the trial court's judgment to reflect these renderings. Amended.

**FACTS AND PROCEDURAL HISTORY:**

On April 22, 2002, Dannie Cottle, (hereinafter "Cottle") was employed by Edgmon Trucking as a truck driver. On that day, Cottle was to pick up a load of chickens from the ConAgra Poultry Company (hereinafter "ConAgra").

In order for Cottle to perform her duties as a truck driver that day, she was required to traverse a set of steps located on the property of ConAgra in order to give

and receive paperwork pertaining to her load. For Cottle to use those steps, she had to cross a makeshift bridge fashioned to avoid walking in standing water that had accumulated at the foot of the stairs. This makeshift bridge was a wooden pallet placed at the base of the stairs by employees of ConAgra.

Cottle crossed the pallet three times. On her fourth trip across the pallet, she lost her footing, fell and injured her head, neck, back and various other parts of her body. Cottle received medical treatment from that date of the accident, April 22, 2002, until January 2004. Cottle filed suit against ConAgra for the damages she suffered due to her accident.

After a trial on the merits, the trial court found that Cottle was 30% at fault for the accident and ConAgra was 70% at fault. In its judgment, the trial court awarded special damages to Cottle, including an award for lost wages. The trial court found that Cottle was disabled from work for four months and that her average weekly wage was $433.00. The trial court used these findings to award Cottle lost wages of $7,500.00.

Cottle appeals the trial court's judgment, citing only errors in the trial court's calculation of lost wages. Cottle contends (1) that the trial court made an error in the calculation of her average weekly wage and (2) that the trial court manifestly erred in finding that she was only disabled from work for four months due to her accident. We agree with both contentions. Thus, we vacate the trial court's finding that Cottle's average weekly wage was $433.00 and render a judgment that Cottle's average weekly wage is amended to $520.38. We also vacate the trial court's finding that Cottle was disabled for three months and render a judgment that Cottle was disabled from April 22, 2002, to October 9, 2002. After recalculation of damages, we amend

2

the trial court's award to reflect that Cottle is entitled to $12,801.35 in lost wages from ConAgra.

**ASSIGNMENTS OF ERROR:**

1. Did the trial court err by awarding only $7,500.00 in lost wages due to miscalculating Ms. Dannie Cottle's pre-injury weekly wage to be $433.00 per week?

2. Did the trial court err in awarding only $7,500.00 in lost wages due to a manifestly erroneous finding that the length of Cottle's disability caused by her accident on April 22, 2002, was only four months?

**ASSIGNMENT OF ERROR #1:**

Cottle argues that the trial court erred in awarding only $7,500.00 in lost wages. First, Cottle argues that the trial court erred by miscalculating her pre-injury average weekly wage to be $433.00. We agree.

Special damages, which are those damages that can be established to a reasonable mathematical certainty, include awards for past and future lost earnings. *Myers v. Broussard*, 96-1634 (La.App. 3 Cir. 5/21/97), 696 So.2d 88. When a trier of fact assesses special damages, the discretion is more limited or narrower than the discretion to assess general damages. *Eddy v. Litton*, 586 So.2d 670 (La.App. 2 Cir. 1991), *writ denied*, 590 So.2d 1203 (La.1992). The standard of review, however, is still that of abuse of discretion. *Wainwright v. Fontenot*, 00-492 (La. 10/17/00), 774 So.2d 70.

A plaintiff has the burden to prove that he or she sustained a loss of income. *Carter v. State Farm Mut. Auto Ins. Co.*, 548 So.2d 53 (La.App. 3 Cir. 1989). An award for lost past wages can be calculated as the amount a plaintiff would have in all likelihood earned had he or she been able to work. *Taylor v. Premier Ins. Co. of Mass.*, 98-1934, 98-1935, (La.App. 3 Cir. 6/30/99), 742 So.2d 35.

3

Despite the fact that Cottle and ConAgra submitted exhibits regarding the five weekly pay periods prior to Cottle's injury, the trial court calculated Cottle's lost wages by first looking to her gross income from 2002, derived from her W-2 form filed with her income taxes that year. Cottle's 2002 W-2 form showed that she earned a gross income of $5,181.00. The trial court then rounded that figure up to $5,200.00. Next, because the trial court reasoned that Cottle had only worked four months in 2002, and because Cottle had earned $5,200.00 in those four months, the trial inexplicably divided $5,200.00 by 12 weeks, rather than the 16 weeks in a normal four month period, to get $433.33. The court rounded that amount down to $433.00 per week. Finally, the trial court, based on its finding that Cottle was unable to work for four months, found that $433.00 per week over four months was about $7,500.00. Because of these calculations, the trial court awarded Cottle $7,500.00 in lost wages.

The trial court is afforded much discretion in choosing how to calculate lost wages. But because there were mathematical errors committed by the trial court, and there is much more accurate information in the record as to how much Cottle would have in all likelihood earned had she been able to work, we vacate the trial court's finding that Cottle earned an average weekly wage of $433.00 and conduct a *de novo* review of the record to find the average weekly wage that is due Cottle.

Both Cottle and ConAgra submitted exhibits as to how much Cottle had earned in the five pay periods prior to her accident. Each argues that the exhibit it submitted should be used to calculate Cottle's average weekly wage. ConAgra submitted a letter from Cottle's employer, Edgmon Trucking, wherein the following was listed as Cottle's wages in the five pay periods prior to her accident:

| Period: | Date: | Amount: |
|---------|---------|-----------|
| (1) | 3-25-02 | $484.02 |

| (2) | 4-01-02 | $544.12 |
| (3) | 4-11-02 | $481.40 |
| (4) | 4-16-02 | $529.06 |
| (5) | 4-21-02 | $563.32 |

Cottle submitted a copy of her pay stubs from several pay checks prior to her accident. We look only to the following checks as they are the checks from the same five pay periods listed above in ConAgra's exhibit:

| Check #: | Date: | Amount: |
| 12303 | 3-25-02 | $771.94 |
| 12327 | 4-01-02 | $762.58 |
| 12361 | 4-11-02 | $661.24 |
| 12374 | 4-16-02 | $743.97 |
| 12392 | 4-22-02 | $702.83 |

There is obvious discrepancy between the exhibits, considering that each purports to reference the same pay periods. A closer examination of the payment stubs submitted by Cottle reveals how Edgmon Trucking arrived at the numbers listed on its letter. Edgmon Trucking apparently took Cottle's commission and subtracted her mileage from her commission.

For example, when looking at Cottle's March 25, 2002, pay stub, we see that her commission was $709.32 and her mileage was $225.30. When one subtracts the mileage from the commission the result is $484.02, exactly what Edgmon has listed as Cottle's income for that pay period.

Cottle argues that if we use the payment stubs she submitted to calculate her average weekly wage, we should simply take her commission and add the reimbursement to her commissions earned in order to determine what her net pay was on each of her checks. We do not agree.

The actual payments to Cottle include payments labeled "REIMB," which stands for reimbursement. Reimbursement is defined in Black's Law Dictionary (8th

5

ed. 2004) as "1. Repayment. 2. Indemnification." Because reimbursement requires one to put forth something in order to be paid something back, the result is neither a net gain nor a net loss, but simply a zero sum. As the record is devoid of any evidence that reimbursement to Cottle is anything but her company placing her in a zero sum position from money she paid beforehand, we find that Cottle's contention that we should include reimbursement in our calculations of her lost wages is without merit.

Cottle also argues that we should consider the sums listed as mileage as part of her income. She bases this argument on the fact that Edgmon takes out, then puts back in her mileage on her paychecks. Cottle contends that we should do that same to calculate her income. Again, we do not agree.

First, Cottle had the burden to prove that mileage is part of her lost income. There is no evidence in the record that indicates that mileage is part of Cottle's income with Edgmon Trucking. Because we are left unmoved from center as to whether mileage should be considered part of Cottle's income, Cottle did not carry her burden to prove that mileage should be included in any calculations for average weekly wage.

Moreover, the W-2 that Cottle submitted in her income tax return, indicates income of $5,181.00. When we look to the pay stubs Cottle submitted, if we add up all the commissions she earned and then subtract all of her mileage, we end up with $5,181.28. If Cottle did not consider her mileage as income when her income tax returns were prepared, we cannot consider that same mileage as part of her lost wages. Therefore, rather than accepting the figures submitted by Cottle in her pay stubs, we instead look to the exhibit presented by ConAgra via a letter from Edgmon Trucking to discern Cottle's average weekly wage as follows:

6

| Date: | Income: |
|-------|---------|
| 3-25-02 | $484.02 |
| 4-01-02 | $544.12 |
| 4-11-02 | $481.40 |
| 4-16-02 | $529.06 |
| 4-22-02 | $563.32 |

Next, we figure the sum of the income of those dates as follows:

| Date: | Income: |
|-------|---------|
| 3-25-02 | $484.02 |
| 4-01-02 | $544.12 |
| 4-11-02 | $481.40 |
| 4-16-02 | $529.06 |
| 4-22-02 | $563.32 |
| TOTAL | $2,601.90 |

Now we take the total income earned over those pay periods and divide it by the number of pay periods, five:

Total Net Wages:    $2,601.90

Pay Periods:    5

This results in an average weekly wage of $520.38. We find that this is the most accurate calculation that can be made from the evidence in the record and gives the best indication of what Cottle would have likely earned had she been able to work. As such, we amend the trial court's judgment to reflect that Cottle's average weekly wage is $520.38, and will recalculate the lost wages that Cottle is due.

**ASSIGNMENT OF ERROR #2:**

In her second assignment of error, Cottle argues that the trial court was manifestly erroneous or clearly wrong in its judgment that Cottle's length of disability due to her accident was four months. We agree.

The standard of review for reviewing the length of disability of a plaintiff is that of abuse of discretion. *Wainwright v. Fontenot*, 774 So.2d 70.

7

Cottle first contends that the trial court committed manifest error as to the length of her disability due to an incorrect finding regarding the final date she received medical treatment. In its reasons for ruling the trial court stated that Cottle was treated for her injuries from April 22, 2002, through January of 2003. This is incorrect. Instead, Cottle's medical records indicate that she received medical treatment from April 22, 2002, through January of 2004.[1]

Nevertheless, while the trial court erroneously stated that Cottle discontinued treatment in January 2003, the misstatement regarding this date had no bearing on the trial court's finding that Cottle could have returned to work four months after her accident. The trial court stated in its reasons for ruling that it made its finding regarding length of disability based on the records of Dr. Calodney, specifically those medical records of October 9, 2002. It was the substance of the records, wherein Dr. Calodney stated that Cottle had unexplained symptoms and showed exaggerated pain responses to tests, that prompted the trial court to make its finding. There is no indication in the record that the length of treatment sought by Cottle had any bearing on the court's finding regarding this issue. Therefore, the trial court's error of how long Cottle received medical treatment is harmless with respect to its finding regarding the length of Cottle's disability.

Cottle also argues that even if the trial court's error as to the length of her treatment had no bearing on its finding regarding length of disability, it abused its discretion in finding that Cottle was entitled to lost wages for only four months. We agree.

---

[1]Perhaps the trial court was confused as to when Cottle last sought treatment from the testimony of Cottle herself wherein she stated that she last saw Dr. Richard C. Kamm, the last physician to treat her, in January of 2003.

8

There is no evidence in the record that provides the trial court a reasonable basis to find that Cottle could return to work after four months. Because of this lack of evidence, we conduct a *de novo* review of Cottle's medical records to find at what point Cottle could return to work.

The medical records of Dr. Kamm, on May 15, 2002, and May 29, 2002, specifically stated that it was his professional opinion that Cottle should remain off of work. Dr. Kamm then determined on June 12, 2002, that Cottle should see a specialist, namely Dr. Aaron Calodney, and stated that Cottle should stay off work until she could see Dr. Calodney. After Cottle did see Dr. Calodney, the only time Dr. Kamm referenced work with regards to Cottle was in a warning that the muscle relaxer prescribed to Cottle may cause drowsiness and it would be unsafe to drive when taking the muscle relaxant if it did indeed cause drowsiness. This warning about the potential side effects of her muscle relaxant, namely drowsiness, is what Cottle claims is the evidence we should use in finding that Cottle could not return to work until January of 2004. We do not agree.

When Cottle saw Dr. Calodney on October 9, 2002, the medical records indicate that Cottle specifically stated that she was on muscle relaxants, and that she did not have any significant side effect from taking those muscle relaxants. As such, a finding that Cottle could not work because of her use of those muscle relaxants would be unfounded. Rather, the facts in the record dictate that Cottle could have returned to work on October 9, 2002.

At that date and onward, there was no objective test performed on Cottle that could explain why she was experiencing pain. Cottle had undergone X-rays, an MRI, a Myelogram, and a Cat Scan of the spine, all of which were normal. Further, it is

9

stated in Dr. Calodney's medical records from October 9, 2002, that there was no explanation of Cottle's symptoms and that she showed exaggeration in response to pain tests.

Therefore, we find that given the totality of the medical testimony in this case, Cottle could have returned to work on October 9, 2002. This entitles Cottle to lost wages from April 22, 2002 to October 9, 2002, a period of 123 work days, or 24.6 weeks of wages that she missed due to her injury.

Because of our findings above, we amend the trial court's judgment awarding Cottle lost wages. Using the correct average weekly wage of $520.38 and multiplying that by the 24.6 weeks of work that we find Cottle missed due to her injury, we find that Cottle is entitled to $12,801.35 in lost wages from ConAgra. The judgment of the trial court is amended as such.

**CONCLUSION:**

The judgment of the trial court is affirmed as amended. The costs of this appeal are to be paid by ConAgra.

**AFFIRMED AS AMENDED.**