STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

11-266

LORI JOHNSON

VERSUS

DAVID JOHN ST. ROMAIN, ET AL.

**********

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 2010-4968-A
HONORABLE MARK A. JEANSONNE, DISTRICT JUDGE

**********

MARC T. AMY
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy and
Phyllis M. Keaty, Judges.

**AFFIRMED IN PART, REVERSED IN PART.**

Thibodeaux, Chief Judge, concurring.

David A. Hughes
Hughes Law Firm
Post Office Box 1831
Alexandria, LA   71309-1831
(318) 443-4090
COUNSEL FOR DEFENDANTS/APPELLANTS:
    Shelter Mutual Insurance Company
    David John St. Romain

**Russell L. Potter**
**Stafford, Stewart, & Potter**
**Post Office Box 1711**
**Alexandria, LA   71309**
**(318) 487-4910**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Economy Premier Assurance Company**
    **Debra Morgan**

**Cory P. Roy**
**Post Office Box 544**
**Marksville,   LA 71351**
**(318) 240-7800**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Lori Johnson**

AMY, Judge.

After the plaintiff was involved in an automobile accident, she filed suit against the other two drivers and their insurance companies, seeking damages for injuries she allegedly incurred as a result of the accident. The plaintiff dismissed one of the drivers after reaching a settlement agreement. The case proceeded to trial on the issue of liability and damages attributed to the remaining defendant. The trial court found the remaining defendant to be solely at fault for the accident and awarded the plaintiff damages for pain and suffering, past medical bills, and past and future lost wages. The remaining defendant and his insurer appeal the finding of sole liability and the amount of damages. For the following reasons, we affirm in part and reverse in part.

### Factual and Procedural Background

The plaintiff, Lori Johnson, alleges that she was injured as the result of an automobile accident. Johnson filed suit against the other two drivers, Debra Morgan and David John St. Romain, as well as their insurers.

When the matter proceeded to trial, only St. Romain and his insurer, Shelter Mutual Insurance Company, remained as defendants. The trial court found that St. Romain was "100% liable and at fault" for the accident and awarded Johnson damages in the amount of $22,500.00 for pain and suffering, $848.71 for past medical bills, and $7,200.00 for past and future lost wages.

St. Romain and his insurer appeal, asserting as error:

I.  The court erred in finding David St. Romain guilty of fault which was the sole cause of the accident.

II.  The court erred in awarding Lori Johnson $7,200.00 for loss of income.

III.  The court's award of general damages in the amount of $22,500.00 is so excessive for the injuries sustained by the plaintiff to be an abuse of the court's discretion.

**Discussion**

*Apportionment of Fault*

In his first assignment of error, St. Romain contests the trial court's determination that he was "100% liable and at fault" for the accident. St. Romain asserts that the evidence shows that Morgan struck Johnson's vehicle first and that St. Romain then struck Morgan's vehicle. He contends that at least 50% of the fault should have been apportioned to Morgan.

An appellate court reviews the trial court's findings of fact under the manifest error-clearly wrong standard. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). When those findings are based on the credibility of witnesses, the appellate court must give great deference to the trial court's findings, "for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said." *Id.* at 844. If the witness's story is so internally inconsistent or implausible on its face, or where documents or objective evidence so contradict the witness's story that a reasonable fact finder would not credit the witness's story, a reviewing court may find manifest error even in a finding ostensibly based upon a credibility determination. *Id.* However, where those factors are not present, and a fact finder's determination is based on "its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong." *Id.* at 845.

The apportionment of fault is a factual determination subject to the manifest error-clearly wrong standard of review and, therefore the trier of fact has much discretion in apportioning fault. *Lee v. Briggs*, 08-2120 (La.App. 1 Cir. 9/10/09), 23 So.3d 362. "[T]he allocation of fault is not an exact science, nor is it the search for a precise ratio." *Layssard v. State, Dep't of Pub. Safety and Corr.*, 07-78, p. 4 (La.App. 3 Cir. 8/8/07), 963 So.2d 1053, 1058, *writ denied*, 07-1821 (La. 11/9/07),

2

967 So.2d 511. Instead, an appellate court, in reviewing the fact finder's allocation of fault should determine whether the allocated fault falls within a certain range that does not violate the manifest error rule. *Id.* In order to disturb the award, the appellate court must first find that the trial court's apportionment of fault is clearly wrong. *Lee*, 23 So.3d 362. Even then, the appellate court can only disturb the award to the extent of lowering it or raising it to the highest or lowest point, respectively, which is reasonably within the trial court's discretion. *Id.*

Johnson testified that she was driving to Marksville, Louisiana on Louisiana Highway 1. A co-worker, Brian O'Neil Charles,[1] was a passenger in the car. According to Johnson, she stopped behind a vehicle that was making a left-hand turn. Both Johnson and Charles indicated that, after a short period of time, they heard "squealing" noises and felt an impact to the rear of their vehicle. Johnson testified that she could see in her rear view mirror that she had been hit by an SUV. Both Johnson and Charles testified that they felt another impact some four to five seconds later.

The driver of the SUV, Debra Morgan, testified that she had stopped or almost stopped behind Johnson's vehicle. According to Morgan, she also heard a "squealing" noise and the rear of her vehicle was struck by a pick-up truck. Morgan testified that the force of the impact pushed her forward into Johnson's vehicle. Morgan did not mention a "second impact" and denied that she struck Johnson's vehicle first. St. Romain was driving the pick-up truck that struck Morgan's SUV. He testified that he took his eyes off the road for a second. According to St. Romain, he was approximately twenty feet away from Morgan's

---

[1] Mr. Charles' name has various spellings and permutations in the record; we use the form adopted in his deposition.

vehicle when he first saw it. St. Romain then "slammed on the brakes," skidded, and hit the rear of Morgan's SUV.

The record indicates that, after the accident, Morgan was upset, shaking, and confused. There was conflicting testimony regarding whether Morgan apologized for the accident and/or said that she was not paying attention. Johnson and Charles both testified at their depositions, which were entered into evidence, that they felt Morgan had "changed her tune" regarding her own liability for the accident. However, at trial Johnson indicated that she could not be sure of who hit whom.

An officer from the Mansura Police Department responded to the scene of the accident. There was testimony that the officer initially indicated that he was going to issue a ticket to both Morgan and St. Romain for following too closely. Morgan testified that, after she told the officer that St. Romain's vehicle struck hers, causing her to roll into Johnson's vehicle, he only issued a ticket to St. Romain. St. Romain testified that he was ticketed for following too closely and that he pled guilty and paid the ticket.

The record indicates that there were two permissible views of the evidence. One view is that Morgan initially struck the rear of Johnson's vehicle and St. Romain then struck Morgan's vehicle, causing her to strike Johnson again. Another is that Morgan stopped, or almost stopped, her vehicle behind Johnson and that St. Romain struck Morgan's vehicle, causing Morgan to strike Johnson's vehicle.

St. Romain admitted that he had taken his eyes off the road and that he did not have enough time to stop before he hit Morgan's vehicle. The responding officer only ticketed St. Romain in connection with the accident, and St. Romain pled guilty and paid the ticket. Further, there was testimony that Morgan denied liability to the responding officer. By the time of trial, Morgan had already

4

reached a settlement with Johnson and had been dismissed from the case. She also testified that she had not filed a claim or suit for her personal injuries, if any, from the accident.[2]

The trial court clearly credited Morgan's testimony that she had stopped, without striking Johnson's vehicle, when St. Romain struck her vehicle and pushed it into Johnson's vehicle. In light of this evidence, the record supports a conclusion that St. Romain was solely responsible for the accident. Given the vast deference given to the trial court's findings of fact, we find no error in the trial court's finding of liability and apportionment of fault solely to St. Romain.

This assignment of error is without merit.

### Damage Award

The remainder of St. Romain's assignments of error address the amount of damages awarded by the trial court. St. Romain contends that the trial court erred in awarding Johnson $7,200.00 in past and future lost wages and that the $22,500.00 general damages award was excessive.

General Damages

St. Romain contends that the award of $22,500.00 in general damages was excessive, given Johnson's "minimal" injuries and conservative medical treatment. The premier case addressing the review of general damage awards is *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257 (La.1993), *cert. denied*, 510 U.S. 1114, 114 S.Ct. 1059 (1994). Therein, our supreme court stated that:

> [T]he role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Each case is different, and the adequacy or inadequacy of the award should be determined by the facts or circumstances particular to the case under consideration.

---

[2] The record indicates that Morgan's insurer filed suit against St. Romain and his insurer seeking subrogation for payments made for property damage.

5

. . . . The initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the "much discretion" of the trier of fact. Only after such a determination of an abuse of discretion is a resort to prior awards appropriate and then for the purpose of determining the highest or lowest point which is reasonably within that discretion.

*Id.*, at 1260 (citations omitted). In determining whether an abuse of discretion has been shown, the relevant evidence must be viewed in the light which offers the most support to the trial court's judgment. *Id.*

The trial court gave lengthy findings of fact and reasons for judgment, stating:

Ms. Johnson testified that it's her right shoulder that's been problematic since the accident. She is right handed. She went through some detail. Her day to day activities and the fact that we are now in early November, 2010, some eight months since the accident and she is still having pain from symptoms. She did testify regarding being a horse, certified farrier, and losing income of approximately $400.00 per month in that industry. She tried on two occasions but was unable because of her shoulder complaints. . . . Horses seem to be important to her. She used to ride in the rodeo but hasn't done it since the accident. Tried one time, was unable to complete. She used to breed and train horses. On the day to day she did discuss the pain at five on a zero to ten scale. She has eight horses, has to feed them. . . . She deals with the pain. I think it's important not to penalize someone for not being a crybaby over their painful symptoms, but it doesn't mean that they don't have them. Sometimes the problems radiate into her neck area from the right shoulder pain. She does take Aleve over the counter about five times a month. Prior to the accident she'd only take something like that once every three or four months.

The trial court also reiterated Johnson's medical history, noting that there were objective findings of injury by her physician at eight weeks after the accident. Further, the trial court compared and contrasted the facts of this case with several cases involving similar injuries, including *Williams v. State, Dep't of Wildlife and Fisheries*, 95-2456 (La.App. 1 Cir. 11/20/96), 684 So.2d 1018, *writ denied*, 96-3069 (La. 3/7/97), 689 So.2d 1372, and *Gremillion v. Derks*, 96-412 (La.App. 4 Cir. 11/18/96), 684 So.2d 492.

6

The trial court's findings indicate that Johnson had at least eight weeks of conservative treatment for her injuries and had ongoing pain at the time of trial, approximately eight months after the accident. The symptoms were severe enough that they impaired Johnson's day-to-day activities. Based on our review of the record, we find that the trial court's award of general damages was not an abuse of discretion. *See also Tubre v. State, Dep't of Transp. & Dev.*, 96-1194 (La.App. 3 Cir. 4/2/97), 693 So.2d 1190, *writs denied*, 97-1913, 97-1916 (La. 11/27/97), 703 So.2d 1307.

This assignment of error is without merit.

Special Damages

St. Romain contends that, because Johnson made a "guesstimate" as to the amount of money that she earned as a farrier, the trial court's award of $7,200.00 was an abuse of discretion. A panel of this court addressed the assessment of lost earnings, a type of special damages, in *Cottle v. Conagra Poultry Co.*, 06-1160 (La.App. 3 Cir. 3/14/07), 954 So.2d 255. The court stated:

> Special damages, which are those damages that can be established to a reasonable mathematical certainty, include awards for past and future lost earnings. *Myers v. Broussard*, 96-1634 (La.App. 3 Cir. 5/21/97), 696 So.2d 88. When a trier of fact assesses special damages, the discretion is more limited or narrower than the discretion to assess general damages. *Eddy v. Litton*, 586 So.2d 670 (La.App. 2 Cir. 1991), *writ denied*, 590 So.2d 1203 (La.1992). The standard of review, however, is still that of abuse of discretion. *Wainwright v. Fontenot*, 00-492 (La. 10/17/00), 774 So.2d 70.
>
> A plaintiff has the burden to prove that he or she sustained a loss of income. *Carter v. State Farm Mut. Auto. Ins. Co.*, 548 So.2d 53 (La.App. 3 Cir. 1989). An award for lost past wages can be calculated as the amount a plaintiff would have in all likelihood earned had he or she been able to work. *Taylor v. Premier Ins. Co. of Mass.*, 98-1934, 98-1935, (La.App. 3 Cir. 6/30/99), 742 So.2d 35.

*Id.* at 258. In cases where there is no basis for a precise mathematical calculation of the amount of lost earnings, the trial court has the discretion to award a

reasonable amount of damages. *Burrell v. Williams*, 05-1625 (La.App. 1 Cir. 6/9/06), 938 So.2d 694. Further "[t]his may consist of a plaintiff's own testimony. However, to allow a plaintiff to recover damages for lost wages in the absence of independent support is highly speculative." *Turner v. Cleveland Trust Co.*, 95-2488, p. 22 (La.App. 4 Cir. 5/22/96), 686 So.2d 871, 880, *writ denied*, 96-1531 (La. 9/27/96), 679 So.2d 1350, citing *McDonough v. Royal Sonesta, Inc.*, 626 So.2d 438 (La.App. 4 Cir. 1993).

The record indicates that Johnson, a probation officer, did not miss any time at her "regular" job. However, Johnson testified that she was a certified farrier and earned supplemental income by shoeing horses on the weekends. According to her testimony, Johnson was unable to continue her business as a farrier because the work involves supporting part of the horse's weight, approximately twelve hundred pounds, on her injured shoulder. She testified that she had attempted to work twice since the accident but had been unable to finish.

Johnson estimated that she typically earned between $400.00 and $750.00 per month working as a farrier. She testified that she was unsure of the exact amount because it was a cash business and she did not keep records. Johnson also testified that she typically shoed six to eight horses each Saturday and, in her deposition, testified that she charged $35.00 per horse. However, Johnson also testified that she did not report her income from the farrier business as taxable income.

The trial court awarded "$400.00 per month for eighteen months regarding the lack of ability to perform the horse farrier business," for a total of $7,200.00. In *McDonough*, 626 So.2d 438, the fourth circuit found that a plaintiff's testimony regarding lost wages was highly speculative where the only evidence submitted in support of the lost wage claim was the testimony of the plaintiff, an attorney, and a

8

list of prospective clients and the amounts she would have charged as a retainer. Here, Johnson herself was unsure of the amount earned from the farrier business and could only provide a self-described "guesstimate" as to her earnings. Further, Johnson admitted that she did not report the income on her taxes.[3] Although the uncorroborated testimony of the plaintiff can support a lost wage award, based on the facts of this case, we find that Johnson's testimony regarding the lost wage claim is insufficient. *See Turner*, 686 So.2d 871.

Thus, the trial court erred in awarding damages for lost wages.

## DECREE

For the foregoing reasons, the judgment of the trial court awarding the plaintiff, Lori Johnson, $7,200.00 in damages for lost wages is reversed and set aside. In all other respects, the judgment of the trial court is affirmed. Costs are assessed to the appellants, David John St. Romain and Shelter Mutual Insurance Company.

**AFFIRMED IN PART, REVERSED IN PART.**

---

[3] *See Cottle*, 954 So.2d at 259 ("If [the plaintiff] did not consider her mileage as income when her income tax returns were prepared, we cannot consider that same mileage as part of her lost wages."); *Cooper v. Lacorte*, 99-1726 (La.App. 4 Cir. 5/17/00), 775 So.2d 4, *amended on rehearing on other grounds*, (La.App. 4 Cir. 1/31/01), 775 So.2d 704 (Where the plaintiff testified that he lost wages from his grass-cutting business, but the defendant submitted evidence showing that the plaintiff had not reported any income in several years, the fourth circuit reversed the judgment of the trial court awarding damages for lost wages.).