11 McKAY, Judge.
In this personal injury action, the defendant appeals the trial court’s finding of liability as well as the quantum of damages while the plaintiff appeals the trial court’s failure to award punitive damages for driving while intoxicated. We affirm the trial court’s finding of liability; we amend the trial court’s award of damages; and we affirm the trial court’s decision not to award punitive damages.
FACTS AND PROCEDURAL HISTORY
On November 27, 1996, a Chevy Yukon, driven by Heather Lacorte, collided with a Chevy Barreta, driven by John T. Cooper, at the intersection of Jefferson Davis Parkway and Earhart Boulevard. The collision appears to have been a minor impact; the Yukon sustained no damage while the Barreta suffered only a small dent to the front panel on the driver’s side.
John Cooper and three of the guest passengers in his vehicle, Marion Cooper, Sheriga Brown, and Vangel Brown, filed suit against Heather Lacorte and Continental Insurance Company. Later, Lionel Brown, the other guest passenger in the *7 vehicle driven by John Cooper, filed a petition for intervention, seeking to |2intervene in the lawsuit against Heather Lacorte and Continental Insurance Company.
A bench trial was held on July 13 and 17, 1998, and August 4, 5, 10, 17, 18, 19, 21, 27, and 28, 1998. On November 20, 1998, the trial court ruled in favor of the plaintiffs and awarded Marion Cooper $1,600,000 in general damages, $90,787 in past medical expenses, $50,000 in future medical expenses, and $244,659 in lost wages and wage earning capacity; John T. Cooper $25,000 in general damages and $3,665 in medical expenses; Sheriga Brown $20,000 in general damages and $1,792 in medical expenses; Vangel Brown $48,000 in general damages and $2,240 in medical expenses; Lionel Brown $575,000 in general damages, $56,006 in past medical expenses, $25,000 in future medical expenses, $18,430 in past lost wages and $360,364 in future lost wages and earning capacity; and Alfred Cooper $40,000 for his loss of consortium claim. These awards included interest from the date of judicial demand until paid, plus all costs of the proceedings. The defendants appeal from this judgment and the plaintiffs have answered the appeal.
DISCUSSION
On appeal, the appellants assert two assignments of error while the appel-lees/cross appellants assert one.
Appellants first contend that the trial court erred in basing its judgment on improperly admitted evidence. Four of the five evidentiary decisions questioned by the appellants have to do with whether an expert was improperly permitted to testify. However, for every expert who testified in this proceeding, the opposing laparty was allowed to and did obtain an expert of their own. It is unlikely that either party incurred prejudice due to the testimony of the expert witnesses. In any event, even if the evidence had been allowed to be introduced, it is unlikely the trial court’s decision would have been affected. The other evidentiary issue raised by the appellants questions the trial court’s allowing rebuttal testimony from one of the appellee’s treating physicians.
The trial judge has great discretion in the manner in which proceedings are conducted before his court, and it is only upon a showing of gross abuse of discretion that appellate courts have intervened. LSA-C.C.P. Art. 1631; Sullivan v. Welch, 328 So.2d 731 (La.App. 3 Cir.1976). Home Insurance Co. of Illinois v. National Tea Co., 577 So.2d 65 (La.App. 1 Cir. 1990), writ granted in part, 580 So.2d 364 and 580 So.2d 365, affirmed in part, reversed in part, 588 So.2d 361 (La.1991). Harris v. West Carroll Parish School Bd., 605 So.2d 610 (La.App. 2 Cir.1992). Furthermore, the trial court has great discretion in controlling the presentation of evidence, including the power to admit or refuse to admit rebuttal evidence. White v. McCoy, 552 So.2d 649, 658 (La.App. 2 Cir.1989). Beecher v. Keel, 94-0314 (LA.App. 4 Cir. 9/29/94) 645 So.2d 666.
After a careful review of the record in the instant case, we find no abuse of discretion in the trial court’s admitting of evidence. Further we find no manifest error in the trial court’s evidentiary rulings.
Appellants also contend that the damages awarded were excessive and constitute an abuse of the trial court’s discretion. The Louisiana Supreme Court |4has consistently maintained that an appellate court is not simply to review the medical evidence and conclude that the award is excessive or inadequate. Reck v. Stevens, 373 So.2d 498 (La.1979). The Court disapproves of the use of a scale of prior awards in cases with similar injuries to determine whether the trier of fact abused its discretion. Id. Rather, the initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the “much discretion” of the trier of fact. Youn v. Mar *8 itime Overseas Corp., 623 So.2d 1257, 1260 (La.1993). Only after such a determination of abuse of discretion is a resort to prior awards appropriate and then for the purpose of determining the highest or lowest point which is reasonable within that discretion. Id.
The trial court awarded John Cooper $25,000 in general damages and $3,605 in medical specials. The standard of review for damage awards requires a showing that the trier of fact abused the great discretion accorded in awarding damages. In effect, the award must be so high or so low in proportion to the injury that it “shocks the conscience.” Moore v. Healthcare Elmwood, Inc., 582 So.2d 871 (La.App. 5 Cir.1991).
As a result of the accident, Mr. Cooper suffered from lumbosacral sprain/ strain with associated vertebral subluxation complex, bilateral sensory neuritis at the L 4 level, and a left-sided neuritis at the L 5 level. Mr. Cooper incurred medical expenses of $2,505 with Executive Chiropractic Services, $320 with Magazine Radiology, and $840 with Magazine Diagnostic. Based on these ftfacts, it does not appear that the general damages awarded to Mr. Cooper were excessive, nor does it appear that the trial court abused its discretion in making the award.
The trial court awarded Sheriga Brown $20,000 in general damages and $1,792 in medical expenses. Sheriga Brown first sought treatment for lower back pain and headaches on December 3, 1996. Dr. Richter, one of her treating physicians, related her injuries to the accident of November 27, 1996. Sheriga Brown treated until March 14, 1997, at which time she was told to continue home exercises. Under these circumstances, it does not appear that the general damage award of $20,000 was excessive.
The trial court awarded Vangel Brown $48,000 in general damages and $2,240 in medical expenses. On December 3, 1996, Vangel Brown sought treatment for head, cervical, and lumbar pain. Dr. Richter diagnosed headaches, cervical sprain, thoracic sprain, lumbosacral sprain, and shoulder and hip contusions. On March 14, 1997, Dr. Richter found Vangel Brown complaint free and released her. In April of 1997, Vangel Brown visited Dr. Kucharchuk, complaining of headaches, neck, and back pain. However, Dr. Ku-charchuk failed to render treatment and opined that by June of 1997, Vangel Brown should have reached maximum medical improvement. Further, at trial, defendants proved Vangel Brown possessed a history of head pain and back injury. Based on this evidence and the awards given to John Cooper and Sheriga Brown, who each had similar injuries to those of Vangel Brown, it appears the trial court abused its | fidiscretion when it awarded Vangel Brown $48,000 in general damages. Considering the awards given to John Cooper and Sheriga Brown, it appears to this Court that a more appropriate award would be $24,000.
The trial court awarded Marion Cooper: $1,600,000 in general damages, $90,787 in past medical expenses, $50,000 in future medical expenses, and $244,659 for lost wages and lost earning capacity. Mrs. Cooper testified that, as a result of the accident, she sustained acute headaches, neck pain, and lower back pain. Mrs. Cooper was initially treated by Dr. Richter on December 3, 1996. For the next two and a half months, Dr. Richter prescribed a conservative course of treatment for Mrs. Cooper. On February 19, 1997, Mrs. Cooper underwent an MRI of the cervical spine which revealed annular protrusions at the C4/5, C5/6, and C6/7 levels. On May 12, 1997, Dr. Kenneth Vogel performed an anterior cervical fusion at the C5/6 and C6/7 levels to correct Mrs. Cooper’s cervical problems.
After the surgery, Dr. Vogel continued to treat Mrs. Cooper for both cervical and lumbosacral pain. On June 17, 1998, Mrs. Cooper underwent another MRI. This *9 MRI revealed a small posterior mid-line disc protrusion at the L4/5 level and a marked reduction of nuclear signal at the L5/S1 level with a large anterior disc pro-trusión and a posterior disc protrusion, On August 20, 1998, Mrs. Cooper underwent a two-level caged fusion in the lumbar spine.
A review of the record reveals that Mrs. Cooper possessed a long history of preexisting medical problems. In fact, in the exact location of a pre-existing j 7condition, Dr. Vogel performed surgery, an anterior cervical fusion at the C5/6 and C6/7 levels. Additionally, in 1994, Dr. Benzali treated Mrs. Cooper for debilitating back pain. These facts lead this Court to believe that the trial court abused its discretion when it awarded Mrs. Cooper $1,600,000 in general damages. In The Gray Insurance Co. v. Hunter, 99-0497 (La.App. 4 Cir. 9/22/99), 752 So.2d 200, our Court awarded $400,000 in general damages to a 65 year old woman who underwent an anterior lumbar in-terbody caged fusion at the L4-5 and L5-S1 levels. In Davis v. Kreutzer, 93-1498 (La.App. 4 Cir. 2/25/94) 633 So.2d 796, writ denied, 94-0733 (La.5/6/94) 637 So.2d 1050, our Court affirmed a trial court’s general damage award of $250,000 where a plaintiff underwent an anterior cervical discec-tomy and fusion at the C5-6 level and would likely require a second surgery. In Hutchinson v. Wal-Mart, Inc., 573 So.2d 1148 (La.App. 1 Cir.1990), the First Circuit affirmed a general damage award of $250,000 where the plaintiff underwent an anterior cervical discectomy and fusion of the disc at the C5-6 level and a partial lumbar laminectomy at L4-5 and L5-S1 levels as well as a partial discectomy at the L4-5 and L5-S1 levels. In the instant case, after considering Mrs. Cooper’s age as well as her medical history and taking into account the various periods of time that have passed since the aforementioned cases were decided, we conclude that the highest amount of general damages that the trial court could have reasonably awarded to Mrs. Cooper is $800,000.
The trial court awarded Marion Cooper a total of $244,659 for lost wages and lost earning capacity. At trial, Dr. Melvin Wolfson, plaintiffs’ expert ^economist, testified Mrs. Cooper suffered past loss of wages of $25,387 and loss of future earning capacity of $143,244. He also testified that the present value for loss of personal services for Marion Cooper was $76,028. Dr. Cornelius Gorman, the plaintiffs’ rehabilitation expert, testified that when one considers Mrs. Cooper’s post-surgical problems, age, educational level and personality, he simply had no vocational recommendation to offer her. The testimony of both of these experts was uncontradicted. Accordingly, the trial court did not err in relying on their testimonies.
The trial court awarded Alfred Cooper, the husband of Marion Cooper, $40,000 for loss of consortium. At trial, it was established that as a result of the accident, the marital relationship between Mr. and Mrs. Cooper has been curtailed. It was also brought out that since the accident Marion Cooper’s ability to handle the household chores had been significantly impaired. Therefore, an award of $40,000 to Alfred Cooper for loss of consortium was within the trial court’s discretion.
The trial court awarded Lionel Brown: $575,000 in general damages, $56,006 in medical expenses, $25,000 for future medical expenses, $18,430 in past lost wages, and $360,365 in future lost wages and lost wage-earning capacity. From December 31, 1996, until May 2, 1997, Lionel Brown underwent conservative medical treatment with Dr. Richter and Dr. Friedman. On April 3, 1997, Dr. Richter released Lionel Brown. Dr. Friedman released him on May 2, 1997. At trial, the medical evidence introduced and the testimony from the stand 19showed that Lionel Brown’s complaints had fully resolved by the time of his release by Dr. Friedman.
*10 In December of 1997, Lionel Brown claimed back-related and cervical discomfort. He sought treatment from Dr. Andrew Kucharchuk. Dr. Kucharchuk viewed spondylothesis at the L5-S1 level and neuritis at the L4-5 and L5-S1 levels. However, Dr. Kucharchuk could not relate these conditions to the accident of November 27, 1996. Although Lionel Brown denied any previous injuries, it was Dr. Ku-charchuk’s opinion that the spondylothesis was the result of some accident which likely occurred many years before.[1] Dr. April, another of Lionel Brown’s treating physicians, emphasized that not all of Brown’s MRI findings could be associated with the 1996 automobile accident. Lionel Brown also saw Dr. Vogel. Dr. Vogel performed a fusion and a discectomy at the L5-S1 level as well as a bilateral remedial branch neurotomy at the L4-5 and L5-S1 levels.
The trial court believed that the accident of November 27, 1996, necessitated Lionel Brown’s surgery and awarded damages accordingly. However, the trial court failed to recognize relevant factual and medical evidence, which tended to show that the accident was not the only thing that necessitated Lionel Brown’s back surgery. Three of Lionel Brown’s treating physicians could not relate his injuries to the automobile accident. The only evidence that relates all of Lionel Brown’s alleged pain to the automobile accident are his own continued protestations. This presents a problem because Lionel Brown is not the most |incredible of witnesses. He is a convicted felon with a criminal record for illegal drug distribution. Furthermore, he repeatedly failed to disclose prior injuries to his doctors. Considering Lionel Brown’s medical history and his credibility problems, the trial cqurt erred in awarding him $575,000 in general damages. A number of Lionel Brown’s injuries that the trial court attributed to the accident were pre-existing conditions that were only exacerbated by the accident. Therefore, a general damage award of $287,500 would be more appropriate.
The trial court also erred in awarding Lionel Brown any amount in lost wages. In order “[t]o recover for actual wage loss, a plaintiff must prove the length of time missed from work due to the tort and must prove past lost earnings.” Mathews v. Dousay, 96-858 (La.App. 3 Cir. 1/15/97) 689 So.2d 503, 513. Lionel Brown did not establish his lost wage claim. At trial, Brown alleged prior employment cutting grass. However, the defendants introduced evidence, which showed that Lionel Brown did not report any earned income for the last five years. Therefore, the trial court’s awards for lost wages and lost wage-earning capacity are contrary to law. Accordingly, we find that Lionel Brown should have received no awards for lost wages or loss of wage earning capacity.
The appellees/cross appellants assert that the trial court erred when it failed to award exemplary damages subject to Louisiana Civil Code Article 2315.4. Article 2315.4 provides for additional damages where a defendant is intoxicated. Although the defendant in the instant case may have been drinking, neither the police officers at the scene, nor the court below believed that she was intoxicated. 11T Both the officers at the scene and the court below were in far better positions to determine whether or not the defendant was intoxicated. Accordingly, we find no error in the trial court’s failure to award exemplary damages.
CONCLUSION
For the foregoing reasons: we affirm the trial court’s finding of liability; we affirm the awards to John Cooper and Sheriga Brown; we reduce the general damage award to Vangel Brown to *11 $24,000; we reduce the general damage award to Marion Cooper to $800,000; we reduce the general damage award to Lionel Brown to $287,000; we reverse the awards for lost wages and loss of earning capacity made to Lionel Brown; and we affirm the trial court’s decision not to award exemplary damages.
AFFIRMED IN PART, AMENDED IN PART AND REVERSED IN PART.
LANDRIEU, J., CONCURS WITH REASONS

. At trial, Lionel Brown admitted a prior back injury as a result of a previous car accident. It also came out that Brown was seen at the emergency room in October of 1997 for a basketball-related injury.