JℰW

⫯⫯⫯ℋℽ

WRC ⫯⫯ℐℰW

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

* * * * * * *

2020 CA 0708

STATE OF LOUISIANA, THROUGH THE DEPARTMENT OF SOCIAL SERVICES, OFFICE OF FAMILY SUPPORT, SUPPORT ENFORCEMENT SERVICES, IN THE INTEREST OF [H.L.F.], [V.S.F.] AND [D.J.F.][1], MINOR CHILD(REN) OF JULIA ANN FORD

VERSUS

HILLARY DAWAYNE HEARD

*--CONSOLIDATED WITH--*

2020 CA 0709

STATE OF LOUISIANA, THROUGH THE DEPARTMENT OF CHILDREN AND FAMILY SERVICES, CHILD SUPPORT ENFORCEMENT SERVICES, IN THE INTEREST OF [V.F.], [D.F.], [M.F.], [W.F.], [W.F.], [F.F.] AND [D.F.], MINOR CHILD(REN) OF JULIA ANN FORD

VERSUS

HILLARY DAWAYNE HEARD

JUDGMENT RENDERED: **FEB 2 5 2021**

* * * * * * *

Appealed from The Family Court
In and for the Parish of East Baton Rouge • State of Louisiana
Docket Number 155220 c/w 216932 • Division A

The Honorable Pamela J. Baker, Judge Presiding

* * * * * * *

Donna U. Grodner
Baton Rouge, Louisiana

ATTORNEY FOR APPELLANTS
DEFENDANTS—Hillary Heard and his
Attorney Donna U. Grodner

Hillar C. Moore
*District Attorney*
Amanda Gros
Kyle Russ
*Assistant District Attorneys*
Baton Rouge, Louisiana

ATTORNEYS FOR APPELLEE
PLAINTIFF—State of Louisiana,
through The Department of Social
Services, Office of Family Support
Enforcement Services

Richard M. Larson
Jeaneretta Scott Evans
Baton Rouge, Louisiana

ATTORNEYS FOR APPELLEES
PLAINTIFFS—Julia Ann Ford, H.F.,
V.F., and D.F.

* * * * * * *

BEFORE: WHIPPLE, C.J., WELCH, AND CHUTZ, JJ.

---

[1] In order to protect the identity of the minor children, we refer to the minor children by their initials throughout this opinion. See Uniform Rules—Courts of Appeal, Rule 5-1 and 5-2.

**WELCH, J.**

In this child support enforcement proceeding, Donna U. Grodner, the attorney who represented defendant, Hillary DaWayne Heard, in an unrelated personal injury matter, appeals an executory judgment rendered against her and in favor of the Department of Children and Family Services ("DCFS") in the amount of $4,480.02, plus a fine, for Ms. Grodner's failure to withhold or pay to DCFS the child support owed by Mr. Heard in accordance with a notice of an income assignment. For reasons that follow, we affirm the judgment of the trial court.

## BACKGROUND

In proceedings initiated by DCFS and pursuant to several judgments, Mr. Heard has been declared the biological father of or acknowledged paternity of six children with Julia Ann Ford, and he has been ordered to pay child support for all six children. The last judgment prior to the commencement of the proceedings at issue in this appeal was rendered and signed on February 10, 2014.[2] Therein, the trial court set Mr. Heard's monthly child support obligation for his six children at the sum of $627.00 per month, payable in two equal semi-monthly installments of $313.50 each, and it ordered that "an Income Assignment Order be made effective immediately …." The February 1, 2014 judgment further provided "**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that if there is any arrearage [owed by Mr. Heard], [DCFS] reserve[d] the right to intercept lump-sum payments such as, but not limited to, federal and state income tax refunds, *settlements*, lottery winnings or inheritance." (Emphasis added).

As determined by earlier proceedings in this matter, Mr. Heard failed to pay his monthly child support obligation and was in in arrears. By judgment signed on October 28, 2013, Mr. Heard's child support arrearage was set, as of that date, in

---

[2] After the commencement of the proceeding that is the subject of this appeal, the trial court rendered a judgment modifying Mr. Heard's child support obligation.

2

the amount of $32,560.01, with said sum being made executory. The October 28, 2013 judgment likewise provided for an Income Assignment Order to be made effective immediately and contained the provision that provided "**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that if there is any arrearage, [DCFS] reserve[d] the right to intercept lump[-]sum payments such as, but not limited to, federal and state income tax refunds, *settlements*, lottery winnings or inheritance."

Ms. Grodner was retained by and represented Mr. Heard in an unrelated personal injury matter. After learning of Mr. Heard's personal injury claim, on February 27, 2018, DCFS sent Ms. Grodner, as "the Payor of Income" a "NOTICE OF ASSIGNMENT – LUMP SUM" setting forth that Mr. Heard "was ordered to pay $313.50 per semi-monthly for [child] support" and that as of the date of the letter, Mr. Heard owed $58,439.96 in past due support. The notice further set forth that under La. R.S. 46:236.3,[3] DCFS was entitled to an income assignment and that the "past due support [was] to be withheld from any payments due [Mr. Heard], including but not limited to bonuses, judgments, *settlements*, annuity, and retirement benefits" and that the notice would "remain in effect until further notice." (Emphasis added).

Almost a year later, on February 21, 2019, after Ms. Grodner had negotiated a settlement on behalf of Mr. Heard, but prior to dispersing the proceeds, Ms. Grodner responded to DCFS's February 27, 2018 notice. Therein, Ms. Grodner acknowledged receipt of the notice; however, she asserted that there was no legal basis for DCFS's claim to any of the settlement proceeds because La. R.S. 46:236.3 and the definition of income therein did "not cover lump[-]sum personal injury settlements." Although Ms. Grodner acknowledged that the definition of

---

[3] The pertinent provisions of La. R.S. 46:236.3 are set forth hereinafter.

3

"income" set forth in La. R.S. 46:236.3 included "settlements," she claimed that the use of that term therein related to a workers' compensation or other settlements of wages and not to settlements for personal injuries. Ms. Grodner, relying on **State, Dept. of Social Services v. Reed**, 2016-171 (La. App. 5th Cir. 7/27/16), 197 So.3d 817 and **Kelly v. Kelly**, 99-2478 (La. App. 1st Cir 12/22/00), 775 So.2d 1237,[4] further argued that lump-sum settlements from personal injury claims were not considered "income" under La. R.S 46:236.3 because settlements from personal injury claims could not be considered income for purposes of calculating a parent's child support obligation (or the modification thereof) under La. R.S. 9:315, *et seq*. Ms. Grodner then closed the letter by stating: "We are not able to find any legal basis for your office to assert any lien over the settlement in this case. If we do not receive legal support for the lien asserted in this matter within fifteen (15) days, we will disburse the settlement proceeds to Mr. Hillary Heard."

Approximately thirteen days later, on March 6, 2019, DCFS issued another "NOTICE OF ASSIGNMENT – LUMP SUM" to Ms. Grodner that was identical to the February 27, 2018 notice, except that it set forth that Mr. Heard's arrearages, as of March 6, 2019, were $66,146.46. Again, the notice specifically stated that under La. R.S. 46:236.3, DCFS was entitled to an income assignment and that the past due child support was to be withheld from "any payments due to [Mr. Heard], including, but not limited to, bonuses, judgments, *settlements*, annuity, and retirement benefits" and that the notice would "remain in effect until further notice." (Emphasis added). Attached to the notice of income assignment was an income assignment order, which was dated November 5, 2009, that provided "IN ACCORDANCE WITH [LA.] R.S. 46:236.3, IT IS ORDERED ... [t]hat the PAYOR of any income including, but not limited to ...*any other payments* made

---

[4] We note that **Kelly** was overruled on other grounds by **Salles v. Salles**, 2004-1449 (La. App. 1st Cir. 12/2/05), 928 So.2d 1.

4

by any person, private entity ... shall withhold from the income of ... [Mr. Heard] ... to satisfy [Mr. Heard's] current obligation of support[,] together with an additional sum ... to discharge the past due amount,"[5] as well as a copy of the pertinent provisions of La. R.S. 46:236.3. DCFS asserted to Ms. Grodner that "[p]er [La.] R.S. 46:236.3(3), income means any form of singular or periodic payment to an individual [and] includes settlements" and requested Ms. Grodner forward to DCFS a copy of the settlement statement. Ms. Grodner responded on March 7, 2019, essentially disagreeing with DCFS's position that a one-time lump-sum settlement on a personal injury claim was income, claiming that "the courts have found otherwise." Ms. Grodner closed the letter by stating "[i]f we do not hear from your office in ten days, we will find that your office concedes that, as a matter of law, it does not have a valid lien on any settlement in this matter."

On April 9, 2019, Ms. Grodner disbursed the sum of $4,480.02 to Mr. Heard, which sum represented the settlement amount of $20,000.00, less Ms. Grodner's 35% attorney's fees, her expenses, and medical bills that had been paid on Mr. Heard's behalf. Ms. Grodner did not withhold, pay, disburse, or forward any sums to DCFS for Mr. Heard's monthly child support obligation or the arrearage, as provided in the notices of assignment. Therefore, on April 26, 2019, DCFS filed a rule for contempt of a payor pursuant to La. R.S. 46:236.3, urging that Ms. Grodner should be held in contempt for disbursing the entirety of the net proceeds from the settlement to Mr. Heard and failing to withhold any amount for

---

[5] We note that the November 5, 2009 income assignment order that DCFS attached to its March 6, 2019 notice of assignment contained a docket number for proceedings in The East Baton Rouge Parish Juvenile Court. However, the initial income assignment order in this proceeding in The Family Court of East Baton Rouge Parish was issued on October 17, 2006, and it contained language identical to the language in the November 5, 2009 Income Assignment Order. On June 30, 2009, under the authority of the provisions of La. R.S. 46:236.2(A)(2) that were in effect on that date, these proceedings in Family Court were transferred to the Juvenile Court for subsequent enforcement and modification, until such time as any issue of visitation or custody arose, at which time the matter would be transferred back to the Family Court. However, based on subsequent statutory changes to La. R.S. 46:236.2, the enforcement and modification proceedings returned to this Family Court proceeding. See La. R.S. 46:236.2 and the amendments thereto.

child support or the arrearage, as mandated by the trial court and La. R.S. 46:236.3.

After several delays, an evidentiary hearing on the rule for contempt was held on September 23, 2019. On October 21, 2019, the trial court issued written reasons for judgment and signed a judgment in favor of DCFS and against Ms. Grodner in the amount of $4,480.02, which sum was made executory. The judgment further ordered that Ms. Grodner pay a fine of $25.00 per day, commencing April 10, 2019 (the day after she disbursed the net settlement proceeds to Mr. Heard), for her failure to withhold or pay over the support in accordance with the provisions of the notice of income assignment, with the fine to continue until all amounts due under the judgment were paid in full. From this judgment, Ms. Grodner appeals.

On appeal, Ms. Grodner contends that the trial court erred in: (1) finding that lump-sum personal injury settlements were included within the statutory definition of "income" such that Mr. Heard's lump-sum personal injury settlement was subject to a notice of income assignment or income assignment order; (2) finding that the income assignment order produced by DCFS applied to "settlements" either by its terms or by reference to statute; (3) failing to apply the statutory deadline by which DCFS was required to produce an income assignment order to preserve its right to intercept funds on a lump-sum disbursement; and (4) finding that her conduct in disbursing the lump-sum net settlement proceeds was willful, casting her in judgment, and ordering her to pay a daily fine.

## LAW AND DISCUSSION

Louisiana Revised Statutes 46:236.3 provides, in pertinent part:

A. For *purposes of this Section*, the following words have the meaning ascribed to them by this Section unless the context clearly indicates a different meaning:

* * *

6

(3) "Income" means *any form of singular or periodic payment to an individual, regardless of source,* including but not limited to wages, salary, interest, commission, compensation as an independent contractor, disability income, unemployment compensation, workers' compensation, bonuses, judgments, *settlements,* annuity and retirement benefits, *and any other payments made by any person,* private entity, federal or state government, any unit of local government, school district, or any entity created by public act.

\* \* \*

(6) "Payor" means the payor of any income to a person ordered to pay support, or any financial institution in which the obligor has assets.

\* \* \*

B. (1) Upon entry of any court order for the establishment or modification of support, *the court shall order an immediate income assignment, which shall be effectuated immediately by providing a written notice to the payor or payors of income,* unless there is a written agreement between the parties or the court finds good cause not to require immediate income assignment. *This income assignment may be effectuated by providing a written notice to any payor or payors of income,* advising the payor to *withhold an amount for current support,* any judgments entered for the costs of genetic testing, *plus an additional amount, to be determined by the obligee, toward any arrearage.*

\* \* \*

E. (1)(a) *Upon receipt of a notice to withhold, the payor of income shall withhold from the income of the obligor the amount ordered for support,* as it becomes due, together with *an additional sum, determined by the obligee,* subject to the limitations provided by R.S. 13:3881, *to discharge the past due amount,* and shall continue the withholding each pay period or *each singular* or periodic payment until further order of the court or until the requirements in Subparagraph (b) of this Paragraph have been met. The payor of income shall implement withholding no later than the first pay period or first singular or periodic payment that occurs following receipt of the notice of income assignment and shall remit amounts withheld within seven days.

\* \* \*

(6)(a) For the purpose of this Paragraph, "lump-sum payment" means a single payment made all at once from any source, in lieu of recurring payments that would be received by an obligor over a period of time.

(b)(i) *When a payor intends to issue a lump-sum payment in the amount of three hundred dollars or more to an obligor, the payor shall notify the department at least fifteen days prior to its issuance of*

7

*the lump-sum payment.* Nothing in this Paragraph shall prevent a payor from reporting a lower lump-sum payment at the payor's discretion.

(ii) Notice of the lump-sum payment shall be provided in a method approved by the department. The department shall provide information regarding all approved methods on its website.

(c) *If, after fifteen days from the date the payor notifies the department, the payor has not received any verification from the department as to any withholdings of the lump-sum payment, then the payor may dispense the lump-sum payment in full to the obligor.*

(d) The provisions of this Paragraph apply only when the department is providing support enforcement services.

(e) A payor who complies with the requirements of this Paragraph shall not be subject to the penalties provided for in Subsection K of this Section.

\* \* \*

I. (1) *The notice to withhold shall operate as an assignment and shall be binding, fourteen days after mailing or other transmission, or from the department by administrative order of income assignment, upon any existing or future employers or payors of income of the person ordered to pay support.*

\* \* \*

K. When *a payor willfully fails to withhold or pay over income pursuant to a valid income assignment order* or willfully discharges, disciplines, or otherwise penalizes a person ordered to pay support, or otherwise fails to comply with any duties imposed by this Section, the court, upon due notice and hearing:

(1) *Shall enter judgment against the payor and direct the issuance of an execution for the total amount that the payor failed to withhold or pay over.*

(2) *May impose a fine against the payor, up to fifty dollars per day, for the failure to withhold or pay over the support in accordance with the provisions of the income assignment notice.*

(3) May order reinstatement of or restitution to the person ordered to pay support, or both, where the person has been discharged, disciplined, or otherwise penalized by the payor as prohibited in this Section.

\* \* \*

M. Any person who willfully initiates a false proceeding under this Section or *who willfully fails to comply with the requirements of this Section shall be punished as in cases of contempt of court.*

(Emphasis added).

First, we address Ms. Grodner's contention that personal injury settlements are not included within the definition of "[i]ncome" set forth in La. R.S. 46:236.3(A)(3). The interpretation of any statutory provision starts with the language of the statute itself. **Oubre v. Louisiana Citizens Fair Plan**, 2011-0097 (La. 12/16/11), 79 So.3d 987, 997, cert. denied, 567 U.S. 935, 133 S.Ct. 30, 183 L.Ed.2d 677 (2012). It is a well-established principle of statutory construction that, absent clear evidence of a contrary legislative intention, a statute should be interpreted according to its plain language. **Cleco Evangeline, LLC v. Louisiana Tax Com'n**, 2001-2162 (La. 4/3/02), 813 So.2d 351, 354. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. La. C.C. art. 9; see also La. R.S. 1:4. Words and phrases shall be read with their context and construed according to the common and approved usage of the language. La. R.S. 1:3. Further, every word, sentence, or provision in a law is presumed to be intended to serve some useful purpose, that some effect is given to each such provision, and that no unnecessary words or provisions were employed. **Oubre**, 79 So.3d at 997.

As set forth above, for purposes of enforcing child support by income assignment, La. R.S. 46:236.3(A)(3) provides that "[i]ncome" means "any form of singular or periodic payment to an individual, regardless of source, including but not limited to ... settlements ... and any other payments made by any person ...." "Settlement" is defined, in pertinent part, by Black's Law Dictionary (11th ed. 2019) as "[a]n agreement ending a dispute or lawsuit." Notably, La. R.S. 46:236.3(A)(3) does not modify, define, or limit the term "settlements" in any way;

9

rather, the term "settlements" is used in the illustrative list of examples of the payments to an individual that are considered to be "income" for purposes of enforcement of child support obligations by income assignment. Applying the plain language of La. R.S. 46:236.3(A)(3), we find that a settlement of a personal injury claim constitutes a singular or periodic payment to an individual, and thus, is "income" for purposes of the enforcement of child support by income assignment. To find otherwise requires us to read language into the statute distinguishing or limiting the types of "settlements" included within the statute's purview, when the legislature chose not to include such language.

To the extent that Ms. Grodner contends that personal injury settlements should be excluded from "income" as defined by La. R.S. 46:236.3(A)(3) based on **Kelly**, **Reed**, and **Guy v. Guy**, 600 So.2d 771 (La. App. 5th Cir. 1992), we agree with the trial court's conclusion, in its written reasons for judgment, that those cases are distinguishable. As the trial court noted, "[e]ach of the cited cases holds that lump[-]sum settlements and life insurance proceeds are not considered 'income' when calculating or modifying child support pursuant to La. R.S. 9:315[, *et seq*]." In this regard, we note that unlike La. R.S. 46:236.3(A)(3), neither the phrase "any form of singular or periodic payment to an individual, regardless of source" nor the term "settlements" are included in the definition of "gross income" set forth in La. R.S. 9:315(C)(3). Indeed, La. R.S. 46:236.3(A)(3) and La. R.S. 9:315(C)(3) are separate statutes providing for different definitions of income for different purposes. As the trial court further noted, in this case, DCFS "is not seeking to establish [or modify] support [in accordance with La. R.S. 9:315, *et seq.*,] but instead, [is] seeking to enforce Mr. Heard's child support obligation by income assignment pursuant to La R.S. 46:236.3." Thus, we find the trial court correctly determined that a personal injury settlement is income for the purposes of the enforcement of child support by income assignment.

10

Next, we address Ms. Grodner's contention that the income assignment order produced by DCFS did not encompass the personal injury settlement disbursed to Mr. Heard because the income assignment order did not contain the word "settlements." However, at the outset, we point out that pursuant to La. 46:236.3(B), the order for an income assignment is "effectuated immediately by providing written notice to the payor or payors of income" and by "advising the payor to withhold an amount for current support …plus an additional amount, to be determined by [DCFS], toward any arrearage." Further, the payor's obligation to withhold such sums commences "[u]pon receipt of a notice to withhold." La. R.S. 46:236.3(E)(1)(a). Herein, DCFS first issued a notice of assignment to Ms. Grodner, as the payor of income to Mr. Heard, on February 27, 2018 and then again on March 6, 2019. Upon Ms. Grodner's receipt of those notices of assignment, her statutory obligation to withhold any sums due to Mr. Heard for the satisfaction of both his current child support obligation and an additional amount toward the arrearages, was triggered. Despite acknowledging receipt of both of those notices, Ms. Grodner did not remit any sums to DCFS.

Insofar as Ms. Grodner claims that, because the November 5, 2009 income assignment order produced by DCFS (with the March 6, 2019 notice of assignment) did not specifically utilize the term "settlements," her obligation to withhold any sums was never triggered, we again point out that the use of the term "settlements," in relation to "income" under La. R.S. 46:236.3, is merely an illustrative example of the types of payments to individuals that are subject to income assignment. Further, while the November 5, 2009 income assignment order itself may not have specifically included the term "settlements" in the illustrative list of examples of the payments considered to be income (as in La. R.S. 46:236.3(A)(3)), the income assignment order expressly stated both that it was issued "IN ACCORDANCE WITH [LA.] R.S. 46:236.3" and that it applied to "the

11

PAYOR of any income including, but not limited to ... any other payments made by any person." In determining that the November 5, 2009 income assignment order encompassed Mr. Heard's personal injury settlement, the trial court recognized that "[t]he income assignment order has inclusive language, i.e., *any other payments*" and that it "cite[d] La. R.S. 46:236.3, which ... specifically states that settlements are income. La. R.S. 46:236.3(A)(3)." Accordingly, we find the trial court correctly found that Mr. Heard's personal injury settlement was encompassed by the November 5, 2009 income assignment order.

Ms. Grodner next claims that DCFS failed to abide by the statutory deadline for asserting its right to an income assignment with respect to Mr. Heard's personal injury settlement, and therefore, she was entitled to disburse the settlement proceeds to Mr. Heard without consequence. As set forth above, under La. R.S. 46:236.3(E)(6)(b)(i), when a payor of income intends to issue a lump-sum payment in the amount of three hundred dollars or more, it shall notify DCFS at least fifteen days prior to issuing the lump-sum payment. Thereafter, DCFS has fifteen days within which to submit verification to the payor of any withholdings to the lump-sum payment; if DCFS fails to provide such verification, then the payor may dispense the lump-sum payment in full to the obligor. La. R.S. 46:236.3(E)(6)(c).

Notably, Ms. Grodner's argument that DCFS failed to abide by the statutory deadline in this regard and that she was entitled to disburse the settlement proceeds to Mr. Heard is premised on her contention that the November 5, 2009 Income Assignment Order was not applicable to Mr. Heard's personal injury settlement and that the notices of assignment issued to Ms. Grodner on February 27, 2018 and March 7, 2019 were without any effect. However, we have already concluded herein that the notices of assignment issued to Ms. Grodner on February 27, 2018 and March 7, 2019 effectuated the income assignment order and further, that the November 5, 2009 income assignment encompassed Mr. Heard's lump-sum

12

personal injury settlement.

As to the timeliness of DCFS's actions, the trial court noted in its reasons for judgment that DCFS "first sent Ms. Grodner notice of the income assignment order … on February 27, 2018 and then again on March 6, 2019. Pursuant to La. R.S. 46:236.3(E)(6)(c), [DCFS] submitted verification as to any withholdings of the lump-sum payment within fifteen days from the date the payor, Ms. Grodner, notified [DCFS] of the lump[-]sum payment." The record supports the trial court's findings in this regard, and as such, we find no error in the trial court's determination that DCS timely complied with La. R.S. 46:236.3(E)(6)(c) prior to Ms. Grodner's disbursement of the proceeds from Mr. Heard's personal injury settlement.

Lastly, Ms. Grodner contends that since she had a factual and legal basis to release the net proceeds of Mr. Heard's personal injury settlement to him, her failure to comply with the notice of assignment was not "willful" and that she should not have been cast in judgment or fined. As set forth above, La. R.S. 46:236.3(K) provides that when a payor willfully fails to withhold or pay over income pursuant to a valid income assignment order, the court, upon due notice and hearing, shall enter judgment against the payor, which sum is to be made executory, and may impose a fine against the payor, up to fifty dollars per day, for the failure to withhold or pay over the support in accordance with the provisions of the notice of income assignment. Ms. Grodner, as the payor of income to Mr. Heard, received two notices of income assignment from DCFS regarding Mr. Heard's child support obligation and arrearage. Upon her receipt of those notices, she was obligated to withhold or pay over the amounts stated therein to DCFS. While it is apparent that Ms. Grodner disagreed with and objected to the basis for DCFS's claim to an income assignment of those funds, she was fully aware of DCFS's position that it was entitled to and had the right to those funds based on

13

income assignment. Rather than resolving the dispute through the myriad of appropriate legal courses of action available to her, Ms. Grodner chose to disregard DCFS's claim and to disburse the entirety of the net settlement proceeds in the amount of $4,480.02 to Mr. Heard. Therefore, based on the record before us, we cannot say that the trial court erred in its determination that Ms. Grodner's conduct was willful and that she willfully failed to comply with a notice of income assignment. Accordingly, we find no error in the trial court's rendition of an executory judgment against Ms. Grodner in the amount of $4,480.02 or in its order that Ms. Grodner to pay a fine of $25.00 per day until all sums were paid in full. See La. R.S. 46:236.3(K) and (M).

## CONCLUSION

For all of the above and foregoing reasons, the October 21, 2019 judgment of the trial court is affirmed. All costs of this appeal are assessed to the appellant, Donna U. Grodner.

**AFFIRMED.**